U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 MAR 23 PM 4: 11

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KAYLA RUSSO,                              )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )        Case No. 2:16-cv-00316
                                          )
NAVIENT SOLUTIONS, LLC,                   )
SLM PRIVATE CREDIT STUDENT                )
LOAN TRUST 2006-A,                        )
SLM PRIVATE EDUCATION STUDENT             )
LOAN TRUST 2010-C,                        )
SLM PRIVATE EDUCATION STUDENT             )
LOAN TRUST 2011-A                         )
SLM PRIVATE EDUCATION STUDENT             )
LOAN TRUST 2011-B, and                    )
NAVIENT PRIVATE EDUCATION LOAN            )
TRUST 2015-A,                             )
                                          )
        Defendants.                       )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO STRIKE DOCUMENTS ATTACHED TO
DEFENDANTS' MOTION TO DISMISS**
(Docs. 44 & 45)

Plaintiff Kayla Russo brings this action against Defendants Navient Solutions,

LLC ("Navient"), SLM Private Credit Student Loan Trust 2006-A, SLM Private

Education Student Loan Trust 2010-C, SLM Private Education Student Loan Trust 2011-

A, SLM Private Education Student Loan Trust 2011-B, and Navient Private Education

Loan Trust 2015-A (the "Loan Trust Defendants") (collectively, the "Defendants"). She

alleges four state law claims arising from the origination and repayment of student loans

in her name: (1) negligence, (2) violations of the Vermont Consumer Protection Act

("VCPA"), 9 V.S.A. § 2453, (3) negligent misrepresentation, and (4) invasion of privacy.

Pending before the court is Defendants' motion to dismiss the Second Amended
Complaint for failure to state a claim upon which relief can be granted. (Doc. 44.)
Plaintiff opposes dismissal. Plaintiff also moves to strike documents attached to
Defendants' motion to dismiss, which Defendants oppose. (Doc. 45.) On December 1,
2017, the court took the pending motions under advisement.

Eric J. Morgan, Esq. and Harry R. Ryan III, Esq. represent Plaintiff. David J.
Martin, Esq. and Jerome F. O'Neill, Esq. represent Defendants.

## I.  Procedural Background.

On October 14, 2016, Plaintiff filed a Complaint in Vermont Superior Court, Civil
Division against Defendant Navient, which then removed the case to this court on
November 30, 2016. After the court granted leave to amend the Complaint, Plaintiff
named the Loan Trust Defendants as defendants in this action. On April 21, 2017,
Defendants moved to dismiss the First Amended Complaint for failure to state a claim
upon which relief can be granted. Plaintiff opposed dismissal and filed a second motion
for leave to amend on June 9, 2017. Defendants opposed granting leave to amend, filing
their response on July 24, 2017. In an Order issued on September 21, 2017, the court
(Murtha, J., presiding) granted Plaintiff's second motion to amend the Complaint and
denied Defendants' motion to dismiss as moot. Plaintiff filed the Second Amended
Complaint that same day.

## II.  The Allegations of the Second Amended Complaint.

Plaintiff is a resident of Vermont. Defendant Navient is a corporation with its
principal place of business in Reston, Virginia and is a subsidiary of a Delaware
corporation, Navient Corporation. Plaintiff does not allege a state of incorporation or
principal place of business for the Loan Trust Defendants.

Plaintiff claims that Defendant Navient is engaged in the business of creating
asset-backed securities for resale to investors and created the Loan Trust Defendants as
"part of a scheme . . . to make subprime loans and securitize subprime loans from
underqualified borrowers." (Doc. 38 at 2, ¶ 11.) She alleges that the Loan Trust
Defendants "claim to be and are the owners and holders of certain notes evidencing

2

student loans made to Plaintiff." *Id.* at 2, ¶ 3. According to Plaintiff, the Loan Trust Defendants have no employees and Defendant Navient was the servicer, agent, and manager for them, creating them as financial vehicles for bundling and securitizing private student loans.

To facilitate the application for student loans, Defendant Navient offers professional services to borrowers through its website. Plaintiff alleges that it negligently provides these professional services by allowing the extension of "subprime loans without reasonable oversight . . . to unqualified borrowers, including Plaintiff." *Id.* at 3, ¶ 17. Plaintiff further alleges that the "practice of subprime lending" was part of a "business strategy to the detriment of Plaintiff, who was a subprime borrower[,]" *id.* at 3, ¶ 18, whereby Defendant Navient would "knowingly or negligently approve[] loans to individuals, including Plaintiff, who did not have the ability to repay" them. *Id.* at 3, ¶ 19. In doing so, Defendant Navient "ignor[ed] its obligation to the subprime borrower" as part of its business strategy. *Id.* at 3, ¶ 20. Plaintiff claims that Defendant Navient knew or should have known that Plaintiff would not have qualified for a conventional loan.

Plaintiff alleges that in 2005, 2006, 2008, and 2009, an applicant identified as Kathryn Blank completed four student loan applications on Defendant Navient's website using Plaintiff's identifying information and indicating that Plaintiff was the borrower.[1] Plaintiff claims that she did not apply for the 2006, 2008, and 2009 loans, however, her allegations do not address whether she applied for the 2005 loan. Defendant Navient purportedly did not "appropriately verify[]" whether Plaintiff was the applicant when processing and approving the 2006, 2008, and 2009 loan applications, *id.* at 5, ¶ 42, consistent with its "history of allowing unidentified third parties, through its website, to apply for loans in the name of the student without appropriately ensuring that the student was the actual loan applicant[.]" (Doc. 38 at 5, ¶ 43.) For the 2006, 2008, and 2009 loan

---

[1] Defendants assert that Kathryn Blank is Plaintiff's mother although this relationship is not apparent on the face of the Second Amended Complaint.

3

applications, Plaintiff alleges that had Defendant Navient conducted "any due diligence[]
[it] would have known" that the current outstanding loan balances provided in the
application were incorrect. *Id.* at 4, ¶ 29; *see also id* at 4, ¶¶ 33, 37. Instead, in each
instance, Defendant Navient approved the loan application, extended the requested
amount in credit, and bundled the loan "into a Loan Trust selected by [Defendant]
Navient." *Id.* at 4, ¶ 30. [2]

Plaintiff makes no claim that she did not receive the disbursement of the loan
funds, or at least accept the benefit of them, and makes no claim that she was the victim
of identity theft or the fraudulent practices of Kathryn Blank. Rather, she alleges that
"[a]fter graduating from college[,] [she] became aware of the extent of the Navient loans
and tried to repay the loans as best she could." *Id.* at 5, ¶ 45. [3] Despite her employment
as a teacher and "multiple second jobs," Plaintiff "had no possibility of keeping current"
on her student loans with Defendant Navient. *Id.* at 5, ¶ 46.

Defendant Navient provides counseling services to assist borrowers in the
repayment of their loans through direct communication with the borrower. It informs
borrowers that it provides such services through its website, which encourages them to
contact Defendant Navient for guidance and assistance. After it became "apparent that
Plaintiff had no possibility of keeping current on the Navient loans, [Defendant] Navient
counseled Plaintiff and advised [her to] place all of the Navient loans in forbearance so

---

[2] While Plaintiff avers that the 2005 loan is held by Defendant SLM Private Credit Student Loan
Trust 2006-A, she does not specify which Loan Trust Defendant was selected for bundling the
2006, 2008, and 2009 loans or which defendant currently holds each of these loans.

[3] In her opposition to the motion to dismiss, Plaintiff asserts that she "never discovered that the
loans were taken out in her name until sometime *well after* she graduated from college." (Doc.
46 at 7) (emphasis supplied). She cannot amend her Second Amended Complaint in this manner.
*See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled
that a plaintiff cannot amend [a] complaint by asserting new facts or theories for the first time in
opposition to a motion to dismiss.") (internal quotation marks and alteration omitted) (citing
*K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)).

4

that Plaintiff and [Defendant] Navient could work together on a repayment plan." (Doc. 38 at 6, ¶ 49.) Plaintiff claims that she "justifiably relied on this advice." *Id.*

In early August 2014, Plaintiff requested that Defendant Navient allow her to pay under their "Income Based Repayment plan." *Id.* at 6, ¶ 50. In response, Defendant Navient advised Plaintiff that forbearance was her best option while it reviewed the loans. Plaintiff alleges she relied on this advice and, on August 19, 2014, submitted a written request to Defendant Navient, again seeking to participate in Navient's Income Based Repayment Plan. In response, Defendant Navient allegedly counseled Plaintiff that forbearance was still her best option and that it needed more time to consider her request for income based repayment. Plaintiff relied on this advice which she claims was "false and misleading." *Id.* at 6, ¶ 52.

On August 25, 2014, Defendant Navient informed Plaintiff that her loans were in forbearance until October 17, 2014 and instructed her to contact customer service for additional assistance once the forbearance period ended. This letter "did not offer or explain any other options for Plaintiff or inform Plaintiff that an income driven repayment plan was not available to Plaintiff." *Id.* at 6, ¶ 53. Plaintiff claims that this advice was "false[,] . . . misleading and not in [her] best interest[,]" *id.*, and part of a strategy to "keep the loans in forbearance to Plaintiff's detriment and to [Defendant] Navient's benefit." *Id.* at 7, ¶ 55. She avers that Defendant Navient never explained to her that forbearance would result in the accumulation of unpaid interest on the loans which would be added to the outstanding principal amount due and that consecutive forbearances would exacerbate these detrimental consequences.

On September 2, 2014, Plaintiff wrote Defendant Navient again requesting that she be allowed to participate in the Income Based Repayment Plan. On September 9, 2014, Defendant Navient wrote to Plaintiff and informed her, allegedly for the first time, that it would not offer Plaintiff the Income Based Repayment Plan for her loans. Plaintiff asserts that this information directly contradicted Defendant Navient's prior representations to her when it allegedly steered her into forbearance.

5

On September 16, 2014, Plaintiff called Defendant Navient's customer service, as allegedly directed by the Navient September 9, 2014 letter. Defendant Navient advised Plaintiff to enter into another forbearance period. On December 15, 2014, Defendant Navient telephoned Plaintiff, informing her that she did not qualify for a lower payment option, and recommended that she enroll in its interest only repayment plan. In counseling Plaintiff, Defendant Navient purportedly "misled Plaintiff about the effect and consequences if [she] agreed to allow the loans to be put into forbearance." (Doc. 38 at 8, ¶ 65.)

In spring of 2015, Plaintiff could no longer afford to make interest payments to Defendant Navient and stopped making them. Defendant Navient then began contacting Plaintiff "every day by telephone, calling [her] up to seven (7) times a day, demanding money from [her]." *Id.* at 8, ¶ 67. Defendant Navient's employees called her while she was working as a teacher, despite Plaintiff's request that they not call her during school hours. If Plaintiff did not answer the phone because she was in class, Defendant Navient called the school asking the school to transfer the call to Plaintiff's classroom. These collection practices "disrupted Plaintiff's employment and injured her reputation with her employer and peers." *Id.* at 8, ¶ 70. After Defendant Navient refused Plaintiff's oral request that its agents contact her only after work hours and not call her employer, Plaintiff wrote Defendant Navient on October 8, 2015, requesting that she only be contacted in writing. Plaintiff alleges that Defendant "Navient disregarded [this request] and continued its relentless telephone assault and campaign of annoyance and intimidation on Plaintiff." *Id.* at 9, ¶ 72.

## III.   Conclusions of Law and Analysis.

### A.   Whether the Court May Consider Documents Attached to Defendants' Motion to Dismiss.

Defendants attach to their motion to dismiss documents they allege must be considered in adjudicating the motion, including what they claim are the 2005, 2006, 2008, and 2009 student loan application and promissory note forms at issue. (Docs. 44-1 - 44-4) They also attach a series of printouts from an athletic website from the college

6

Plaintiff allegedly attended which purport to show her graduation date. (Doc. 44-5.)
Finally, they attach a "Repayment Option Request Form" (the "Repayment Form")
signed by Kayla Blank, Plaintiff's maiden name, and faxed to Defendant Navient in
December 2010 from Plaintiff's counsel, which they assert negates any claim that
Plaintiff was misled regarding whether the interest on her loans would be capitalized.
(Doc. 44-6.) The Repayment Form states in relevant part:

> Before signing this document, please read it thoroughly to ensure you
> understand all of the following: . . . If I am past due on my loan payments
> because of my financial circumstances, I request a forbearance to cover all
> payments due before this schedule begins. I understand that all accrued
> interest will be capitalized (added to my loan principal). . . . Unpaid
> interest on private student loans will be capitalized at the end of the
> forbearance period.

(Doc. 44-6 at 2.)

Plaintiff moves to strike consideration of the documents, contending they are not
appropriate for judicial notice and are neither incorporated by reference nor integral to
her claims, except for the "alleged uncertified copies of the loan notes, which are not
properly authenticated[.]" (Doc. 45 at 1.)

In analyzing a motion to dismiss for failure to state a claim, the court considers the
facts alleged in the complaint, "any written instrument attached to [the complaint] as an
exhibit[,]" "documents incorporated in [the complaint] by reference[]" and any
documents considered "integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834
F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). A document is
"integral" to the complaint if the complaint's allegations rely "heavily upon [the
document's] terms and effect[.]" *Id.* (internal quotation marks omitted) (citing *DiFolco
v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). A plaintiff's "mere notice"
of the document or "possession" of it is insufficient to render a document integral to a
complaint. *Id.* at 231 (internal quotation marks omitted). "This generally occurs" when
the incorporated material is a "contract or other legal document containing obligations
upon which the plaintiff's complaint stands or falls, but which for some reason - usually
because the document, read in its entirety, would undermine the legitimacy of the

7

plaintiff's claim - was not attached to the complaint." *Id.* There is no doubt that the student loan applications and the Repayment Form are integral to Plaintiff's Second Amended Complaint.

However, even when a document is "integral" to the complaint, it will not be considered if a "dispute exists regarding the authenticity or accuracy of the document." *Id.; see also Gorbaty v. Wells Fargo Bank, N.A.*, 2014 WL 4742509, at *14 (E.D.N.Y. Sept. 23, 2014) ("Even if [the] Equity Note provided by [Defendant] were 'integral' to [Plaintiff's] breach of contract claim, the court would still be unable to consider [it] to [Plaintiff's] detriment as she expressly disputes the documents' authenticity."); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415, 416 n.4 (S.D.N.Y. 2010) (refusing to consider a promissory note and mortgage even though the plaintiffs referenced these documents in their complaint and their authenticity objections appeared "less than genuine" and "of questionable validity"). "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Nicosia*, 834 F.3d at 231 (internal quotation marks and citations omitted).

## 1. The Alleged Copies of the Loan Applications and the Repayment Form.

Plaintiff objects to the court's consideration of the alleged copies of the 2005, 2006, 2008, and 2009 loan applications and promissory note forms, even though they are clearly incorporated by reference in the Second Amended Complaint and integral to her claims. She asserts that the documents require "test[ing] in discovery and questions remain regarding their authenticity and reliability." (Doc. 45 at 2.) Assuming this representation is made in good faith, the court accepts it at face value. *See* Fed. R. Civ. P. 11 (requiring a good faith factual and legal basis for claims or representations made to the court). The court therefore GRANTS Plaintiff's motion to strike consideration of the alleged copies of the loan notes. *See DiFolco*, 622 F.3d at 111 ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.") (internal quotation marks omitted); *see also Gorbaty*, 2014 WL 4742509, at *14 (refusing to consider an equity note on a motion

8

to dismiss where the plaintiff "expressly challenged the authenticity of her signature[]" on the note).

In contrast, Plaintiff does not dispute the veracity or authenticity of the "Repayment Form," bearing a cover sheet and timestamps indicating that Plaintiff's counsel sent the document to Defendant Navient in December 2010. When a document is not incorporated by reference in the complaint, however, a court can consider it only if "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia*, 834 F.3d at 230 (internal quotation marks omitted) (citing *DiFolco*, 622 F.3d at 111). "[M]ere notice or possession is not enough." *Id.* at 231 (internal quotation marks omitted).

In this case, Plaintiff alleges that she became aware of the extent of the student loans only after she graduated college and at that point made efforts to repay the loans. She further avers that she requested, in writing, that Defendant Navient offer her an income based repayment plan. In the Repayment Form, Plaintiff requested that Sallie Mae, now known as Defendant Navient, authorize a repayment plan with four years of monthly payments "that may be as low as interest only[.]" (Doc. 44-6 at 2.) By signing the form, Plaintiff represented that if her loans were placed in forbearance, she "underst[ood] that all accrued interest will be capitalized (added to [her] loan principal)[]" and that "[u]npaid interest on private student loans will be capitalized at the end of the forbearance period." *Id.*

Because the Repayment Form documents Plaintiff's efforts to repay the loans and to seek an alternative repayment plan, Plaintiff's allegations rely heavily upon its contents. Consequently, the court will consider the Repayment Form in analyzing Defendants' motion to dismiss. The court thus DENIES Plaintiff's motion to strike this document.

### 2. Printouts from Plaintiff's College Athletics Website.

Plaintiff moves to strike printouts allegedly showing she graduated from college in 2010. These documents are not referenced, incorporated, or integral to her Second Amended Complaint, and Defendants do not contend otherwise.

9

Plaintiff argues that the website printouts are not appropriate for judicial notice. On a motion to dismiss, the court can take judicial notice of a document "to establish the existence of the [statements in the document], not for the truth of the facts asserted" therein. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks omitted); *see also Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) ("[A court] may properly take judicial notice of [a] document" when the document is "publicly available and its accuracy cannot reasonably be questioned."); Fed. R. Evid. 201(b)(2) (providing that a court "may judicially notice a fact that is not subject to reasonable dispute because it[] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

In taking judicial notice of a website, the court can consider the existence of a webpage but not the truth of its contents, if disputed. *See Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 2016 WL 1274541, at *13 (E.D.N.Y. Mar. 31, 2016) ("[E]ven if the [c]ourt took judicial notice of the website, the [c]ourt could only take notice of the fact that [the] website states it has an asset investigation department, as opposed to the fact that such a department actually exists, which Plaintiff disputes."). In this case, Defendants seek judicial notice of webpages that are publicly available, and Plaintiff does not dispute their authenticity or the truth of their contents. *See Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (taking judicial notice of college website homepages attached to the defendants' motions to dismiss where the authenticity of the websites and printouts of the websites "have not been challenged" and are "not subject to reasonable dispute.") (internal quotation marks omitted); *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("[The opposing party] does not actually dispute the factual material reflected in these websites. He simply would prefer that the [c]ourt not consider these materials."). As a result, the website printouts are the proper subject of judicial notice and the court may consider them to establish when Plaintiff graduated from college. For this reason, the court DENIES Plaintiff's motion to strike consideration of the website printouts attached to Defendants' motion to dismiss.

10

## B. Whether to Convert Defendants' Motion to Dismiss to a Motion for Summary Judgment.

If the court refuses to consider the documents attached to its motion to dismiss, Defendants ask the court to convert their motion to dismiss into one for summary judgment. When presented with extrinsic material attached to a motion to dismiss, "Rule 12(b) afford[s] two options": "exclude[] the extrinsic document[]" or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). As this case is in a nascent phase and as adjudication of the motion to dismiss will significantly narrow Plaintiff's claims, the court declines to convert the pending motion to one for summary judgment. *See id.* (stating that the district court retains the discretion to "elect[]" to "exclude[] the extrinsic documents"); *see also Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 67-68 (2d Cir. 2014) (affirming the district court's "discretion" under Rule 12(d) to decide "to convert" a motion to dismiss into a motion for summary judgment).

## C. Whether Defendants' Motion to Dismiss Must be Considered a Motion for Reconsideration and Whether the Law of the Case Doctrine Applies.

Contesting the proper standard of review, Plaintiff argues that Defendants' motion to dismiss must be analyzed as a motion for reconsideration because it attempts to "re-package defenses" previously rejected by the court in granting Plaintiff leave to amend her complaint. (Doc. 46 at 3.) In the alternative, she asks the court to find that the law of the case doctrine forecloses Defendants' requests for dismissal.

Defendants previously moved to dismiss Plaintiff's First Amended Complaint, which is no longer an operative pleading in this case. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation marks omitted) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also* Fed. R. Civ. P. 15(a)(3) (stating that "any required response to an amended pleading *must* be made within the time remaining to respond to the original

11

pleading or within 14 days after service of the amended pleading, whichever is later.") (emphasis supplied). Defendants are not seeking reconsideration of the court's previous decision, but rather are asserting an appropriate Rule 12 motion in response to Plaintiff's new pleading. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of [the Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed."). Defendants' motion to dismiss is therefore not subject to the exacting standard for a motion for reconsideration.

The law of the case doctrine is equally inapplicable because it directs a court, having previously ruled on an issue, to adhere to its decision in subsequent stages of the same case "unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted). The Second Circuit has noted, however, that the doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Id.* (internal quotation marks omitted). In granting leave to amend, this court denied Defendants' motion to dismiss as moot. The law of the case doctrine therefore does not preclude Defendants from moving again for dismissal.

## D. The Standard of Review for a Motion to Dismiss for Failure to State a Claim.

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[4] The sufficiency of a plaintiff's complaint under Fed. R. Civ. P. 12 is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the

---

[4] The "no set of facts" standard set forth in *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) and cited by this court's Memorandum and Order dated September 21, 2017 (Doc. 37 at 4) has been abrogated by the United States Supreme Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) ("We could go on, but there is no need to pile up further citations to show that *Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough[] . . . [and] this famous observation has earned its retirement.").

12

court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017); *see also Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) ("[I]ssues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss[.]").

Although not clear from the factual allegations of Plaintiff's Second Amended Complaint, Plaintiff alleges diversity jurisdiction. Because Plaintiff alleges state statutory and common law causes of action, the substantive law of Vermont governs her claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009) (applying the "substantive law of the forum state, New York[,]" in a case where jurisdiction was based on diversity of citizenship).

### E. Whether the Claims Against the Loan Trust Defendants Should be Dismissed.

Defendants seek dismissal of Plaintiff's claims with prejudice as to the Loan Trust Defendants because Plaintiff does not allege that they engaged in any wrongdoing. Defendants note that Plaintiff refers to the Loan Trust Defendants only generally and asserts only legal conclusions unsupported by plausible factual allegations regarding the basis for their liability.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 116 (3d Cir. 2017) (affirming dismissal of a claim that contained "legal conclusions and present[ed] no facts upon which such conclusions could be reached.");

*Tuff v. Vill. of Yorkville Police Dep't*, 2017 WL 2790529, at \*4 (N.D.N.Y. June 27, 2017) (dismissing allegations that "contain no factual content plausibly implicating [the defendant]" and therefore "are nothing more than unadorned legal conclusions[.]").

Arguing that she has plausibly stated a claim for relief against the Loan Trust Defendants, Plaintiff identifies several allegations from the Second Amended Complaint specifically pertaining to these defendants. She claims that: the Loan Trust Defendants have no employees; Defendant Navient was the agent, manager, and servicer of loans on behalf of the Loan Trust Defendants; Defendant Navient created the Loan Trust Defendants as a financial vehicle to "bundle and securitize private student loans[]" (Doc. 38 at 2, ¶ 9); and Defendant Navient created the Loan Trust Defendants as part of a "scheme" to make and "securitize subprime loans from underqualified borrowers" such as Plaintiff, *id.* at 2, ¶ 11. Plaintiff, however, provides no plausible factual basis for these labels and conclusions. *See Iqbal*, 556 U.S. at 678 (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted). Moreover, in the absence of a civil conspiracy claim or some action that they have taken that binds their principal, the allegations do not actually support the claims she has asserted. Notwithstanding her Second Amended Complaint's reference to "Defendants," Plaintiff's claims are based solely on Defendant Navient's obligations, acts, or omissions. Plaintiff alleges no wrongdoing by the Loan Trust Defendants; indeed, she alleges no interaction of any kind with any of them.

If the Loan Trust Defendants are dismissed, Plaintiff argues that the court may not be able to "accord complete relief among" the existing parties because the Loan Trust Defendants are necessary parties as they own the debt arising from the loans at issue. Fed. R. Civ. P. 19(a)(1)(A) states that a party "must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties[.]" The relief Plaintiff seeks, however, does not include rescission or modification of the loan agreements allegedly held by the Loan Trust Defendants. Rather, she requests damages "in an amount which will fairly and adequately compensate [her] for her damages, including punitive damages, financial loss, embarrassment, emotional distress, loss of

14

enjoyment of life, attorneys' fees, other costs and expense[]" for the torts allegedly committed by Defendant Navient. (Doc. 38 at 12.) She may thus recover her damages from Defendant Navient. The Loan Trust Defendants are not therefore necessary parties whose "absence . . . would affect the relief that [Plaintiff] can recover for the damage [she] suffered[.]" *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 140 (2d Cir. 2002); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) ("A party is necessary under Rule 19(a)(1) only if in that party's absence complete relief cannot be accorded among those already parties.") (internal quotation marks and emphasis omitted). For the foregoing reasons, the court GRANTS Defendants' motion to dismiss and DISMISSES WITHOUT PREJUDICE all claims against the Loan Trust Defendants.

## F. Whether the Economic Loss Rule Bars Plaintiff's Claims.

Defendants seek dismissal of Plaintiff's claims under the economic loss rule, which "maintains a distinction between contract and tort law by prohibiting recovery in tort for purely economic losses." *Walsh v. Cluba*, 2015 VT 2, ¶ 27, 198 Vt. 453, 466, 117 A.3d 798, 808 (alterations and internal quotation marks omitted). "Vermont has adopted the economic loss rule, which prohibits recovery under tort for economic losses which are not also accompanied by tangible, physical harm." *Hunt Const. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 14 (2d Cir. 2010). As the Vermont Supreme Court has explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

*Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322, 327, 59 A.3d 752, 756; *see also Walsh*, 2015 VT 2 at ¶ 27, 198 Vt. at 466, 117 A.3d at 808 ("Tort law imposes duties to protect the public from harm, and thus negligence actions are generally limited to unanticipated physical injury, while contract law allows parties to protect themselves through bargaining.").

Pursuant to Vermont's economic loss rule, "negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." *Springfield Hydroelectric Co. v. Copp*, 779 A.2d 67, 70 (Vt. 2001) (alteration and internal quotation marks omitted). As a result, "[t]he determining factor in deciding whether to apply the economic-loss rule is not whether privity exists but rather whether there is a duty separate and apart from a contractual duty." *Walsh*, 2015 VT 2 at ¶ 27, 198 Vt. at 466, 117 A.3d at 808 (internal quotation marks omitted).

Vermont recognizes an exception to this rule and allows a party to recover "purely economic losses . . . in professional services cases because the parties have a special relationship[.]" *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 31, 181 Vt. 513, 524, 928 A.2d 497, 507. The existence of a special relationship turns on whether "the nature of the relationship—most often a professional relationship such as doctor-patient or attorney-client—is such that it automatically triggers an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Walsh*, 2015 VT 2 at ¶ 30, 198 Vt. at 468, 117 A.3d at 809.

### 1. Whether the Economic Loss Rule Bars Plaintiff's Negligence Claim (Count I).

Plaintiff argues that the economic loss rule cannot apply because "Defendants mistakenly assume a contract between the parties, which, of course, is a matter of vigorous dispute." (Doc. 46 at 8.) Although the economic loss rule does not turn on whether privity exists between the parties, the presence or absence of a contract is relevant to determining whether a defendant owes a duty separate and apart from a contractual duty. *See Springfield Hydroelectric*, 779 A.2d at 71-72 (applying the economic loss rule, in the absence of contractual privity, because "[t]he underlying analysis turns on whether there is a duty of care *independent* of any contractual obligations.") (internal quotation marks omitted).

Regardless of whether a contract exists, the Vermont Supreme Court has "ma[de] clear that negligence law does not generally recognize a duty to exercise reasonable care

to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." *Gus' Catering, Inc. v. Menusoft Sys.*, 762 A.2d 804, 807 (Vt. 2000) (internal quotation marks omitted); *see also O'Connell v. Killington, Ltd.*, 665 A.2d 39, 42 (Vt. 1995) (holding that the defendant ski resort has no duty to obtain the identity of an unidentified skier who collided with the plaintiff so that the plaintiff could sue the skier because, in part, the plaintiff sought to impose a duty to prevent purely economic loss). Plaintiff claims to have suffered "significant harm" and "sustained damages" from Defendants' alleged negligence, (Doc. 38 at 9, ¶¶ 78, 79), but does not allege any physical harm resulting from Defendants' failure to verify her identity and ensure her qualifications as a borrower. Rather, her alleged damages from this tort are purely economic. She could not plausibly claim that her "embarrassment, emotional, [and] loss of enjoyment of life[]" result from this aspect of her claims. *Id.* at 12. The economic loss rule thus "prohibits [her] recovery under tort for economic losses which are not also accompanied by tangible, physical harm." *Hunt Const. Grp.*, 607 F.3d at 10 (citing *Breslauer v. Fayston Sch. Dist.*, 659 A.2d 1129, 1132 (Vt. 1995)).

Nor has Plaintiff plausibly alleged a "special relationship." While Vermont recognizes the professional services exception, the Second Circuit has found "no case in which the Vermont Supreme Court has actually found the exception to apply." *Id.* at 14; *see also Associated Elec. & Gas Ins. Servs. Ltd. v. Elec. Power Sys., Inc.*, 2014 WL 12717669, at *8 (D. Vt. Dec. 23, 2014) (noting that "[t]his observation remains accurate").[5] The Vermont Supreme Court has identified examples of relationships which it might find sufficient for a "special relationship" under the "professional services exception," but none are present here. *See, e.g., Walsh*, 2015 VT 2 at ¶ 30, 198 Vt. at 468, 117 A.3d at 809 (citing "doctor-patient" and "attorney-client" relationships as examples); *Long Trail House*, 2012 VT 80 at ¶ 22, 192 Vt. at 332, 59 A.3d at 759 (in the

---

[5] This court recognized that "engineering services . . . fall within the professional services exception[.]" *Associated Elec. & Gas Ins. Servs. Ltd. v. Elec. Power Sys., Inc.*, 2014 WL 12717669, at *9 (D. Vt. Dec. 23, 2014).

case of "an engineer, architect or other professional"); *EBWS*, 2007 VT 37 at ¶ 32, 181 Vt. at 525, 928 A.2d at 508 (in the case of "a professional architect").

Because Plaintiff alleges no tangible, physical harm as a result of Defendant Navient's acts and omissions and does not allege a special relationship, the court GRANTS Defendant's motion to dismiss Plaintiff's negligence claim (Count I) pursuant to Vermont's economic loss rule.

### 2. Whether the Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim (Count III).

Defendants also seek dismissal of Plaintiff's negligent misrepresentation claim under the economic loss rule. The Vermont Supreme Court has adopted the Restatement (Second) of Torts § 552(1) which provides:

> One who, in the course of his [or her] business, profession or employment, or in any other transaction in which he [or she] has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information.

*Burgess v. Lamoille Hous. P'ship*, 2016 VT 31, ¶ 21, 201 Vt. 450, 461, 145 A.3d 217, 224 (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1965)).

The Vermont Supreme Court has recognized that economic damages may be recovered in a negligent misrepresentation claim on several occasions. *See, e.g.*, *Limoge v. People's Trust Co.*, 719 A.2d 888, 889 (Vt. 1998) (seeking damages for the "reduced value of the lot" plaintiffs acquired); *Pearson v. Simmonds Precision Prods., Inc.*, 624 A.2d 1134, 1137 (Vt. 1993) (noting that the damages recoverable were limited to "pecuniary loss suffered"); *see also Stokes v. Wells Fargo Bank, N.A.*, 37 F. Supp. 3d 525, 535 (D. Mass. 2014) (finding that under Massachusetts law, which follows the Restatement, the economic loss rule does not apply to negligent misrepresentation claims). As the Second Circuit has observed, however, in allowing these cases to

proceed, the Vermont Supreme Court has not "discussed the economic loss doctrine at all." *Hunt Constr. Grp.*, 607 F.3d at 17.[6]

Because the question of whether the economic loss rule applies to claims of negligent misrepresentation is unresolved under Vermont law, dismissal of Plaintiff's claim for negligent misrepresentation pursuant to the economic loss rule at the pleading stage is premature. *See Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2016 WL 7176586, at *14 (D. Vt. Dec. 7, 2016) ("At the pleading stage, dismissal of a novel claim without the benefit of discovery and a factual record is not warranted.") (citing *Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979)).

### 3. Whether the Economic Loss Rule Bars Plaintiff's VCPA Claim (Count II).

Plaintiff alleges that Defendants violated the VCPA by engaging in "unfair, misleading, and deceptive actions" including:

(a) Failing to appropriately verify the identity of Plaintiff when the loans were made;

(b) Failing to appropriately verify that each loan was for the correct amount;

(c) Knowingly approving loans to individuals who did not have the ability to repay the loans;

(d) Providing deceitful and misleading advice to Plaintiff in connection with her repayment of the loans;

[e] Steering Plaintiff, who was experiencing long term economic hardship, into forbearance multiple times; and

[f] Failing to provide Plaintiff with viable repayment options for the loans and misleading Plaintiff about her repayment options.

(Doc. 38 at 10, ¶ 85.)

The Vermont Supreme Court has not addressed whether the economic loss rule bars claims made under the VCPA. Under 9 V.S.A. § 2461(b), "[a]ny consumer who

---

[6] The Second Circuit in *Hunt Constr. Grp.* certified the question of whether the economic loss rule bars a negligent misrepresentation claim to the Vermont Supreme Court. Because the parties settled the case while the appeal was pending, no response to the certified question was provided. *See* Doc. 37 at 8 n.7 (citing *Hunt Constr. Grp.*, 607 F.3d at 17-18).

contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453" may seek damages or appropriate equitable relief from "the seller, solicitor, or other violator[.]" Pursuant to its plain language, the VCPA does not bar economic relief. *See Shires Hous., Inc. v. Brown*, 2017 VT 60, ¶ 9, 172 A.3d 1215, 1219 (stating that, when construing a statute, "our first step is to examine the statute's language because we presume that the Legislature intended the plain, ordinary meaning of the statutory language."); *Huntington v. McCarty*, 807 A.2d 950, 954 (Vt. 2002) ("It is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective.") (internal quotation marks and emphasis omitted); *see also Sawyer v. Robson*, 2006 VT 136, ¶ 12, 181 Vt. 216, 223, 915 A.2d 1298, 1304 (construing the "plain meaning" of the phrase "other violator" from the statutory language of § 2461 of the VCPA) (internal quotation marks omitted).

There is no binding authority supporting Defendants' position that the common law economic loss rule bars a statutory claim for relief. The only non-binding authority cited by Defendants, *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002), "no longer has precedential effect." *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427 (E.D. Pa. 2015) (noting that the Third Circuit in *Werwinski* predicted that the economic loss rule would apply in Pennsylvania state court, but "[s]ince *Wewinski* issued, the Pennsylvania courts have spoken[]" and "held that the economic loss doctrine does not apply to [Pennsylvania's Consumer Protection Act] claims"). Several other courts have held that state statutory consumer protection claims are not barred by the economic loss rule.[7] Because the Vermont Supreme Court has not decided whether the economic

---

[7] *See, e.g.*, *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 424 (E.D. Pa. 2015) (holding that fraud claims under Pennsylvania's Consumer Protection Act are not barred by the economic loss doctrine); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 967 (N.D. Cal. 2014) (holding "that [North Carolina's] consumer protection statute . . . gives rise to a duty independent of the contract and therefore should not be barred by the economic loss rule."); *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 512 (E.D. Mich. 2008) (finding that the

20

loss rule applies in the context of a VCPA claim, and the plain language of the Act supports a conclusion that it does not, Defendants' motion to dismiss Count II of the Second Amended Complaint based on the economic loss rule is DENIED.

## 4. Whether the Economic Loss Rule Bars Plaintiff's Invasion of Privacy Claim (Count IV).

Plaintiff's invasion of privacy claim is likewise not clearly barred by the economic loss rule. "Invasion of privacy is a substantial, intentional intrusion upon the solitude or seclusion of another, or upon his private affairs or concerns, which would be highly offensive to a reasonable person." *Harris v. Carbonneau*, 685 A.2d 296, 300 (Vt. 1996).

Defendants argue that Plaintiff is seeking recovery for "economic losses unaccompanied by 'tangible, physical harm'" (Doc. 44 at 9), however, the Vermont Supreme Court has previously upheld awards of economic damages for invasion of privacy in the absence of physical injury. *See, e.g., Shahi v. Madden*, 2008 VT 25, ¶ 24, 183 Vt. 320, 333, 949 A.2d 1022, 1033 (upholding compensatory damages for plaintiffs whose "sense of peace and privacy in their home has been destroyed by defendant"); *Staruski v. Cont'l Tel. Co. of Vt.*, 581 A.2d 266, 267 (Vt. 1990) (holding that an employee could recover for invasion of privacy when her employer ran an advertisement in a newspaper praising the employer and displaying the employee's name and photograph without the employee's consent).[8] Other courts have reached a similar conclusion. *See,*

---

plaintiff's claim under the Michigan Consumer Protection Act was not barred by the economic loss rule); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2008 WL 4126264, at *29 (D.N.J. Sept. 2, 2008) (collecting cases holding that New Jersey's Consumer Fraud Act grants "consumers the right to recover economic losses" and that the defendant "cite[d] no authority extending [the economic loss rule] to bar recovery under the New Jersey CFA"); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *23 (D.N.J. May 8, 2017) (finding that the economic loss rule does not apply to "statutory fraud and/or consumer protection claims").

[8] Defendant cites *Long Trail House* and *Hunt Constr. Grp.*, but those cases do not address whether the economic loss rule applies to invasion of privacy or intentional tort claims. *See Long Trail House*, 2012 VT 80 at ¶ 29, 192 Vt. at 334, 59 A.3d at 761 (holding that the economic loss rule barred the plaintiff's negligence claim); *Hunt Constr. Grp.*, 607 F.3d at 14 (considering whether the economic loss rule applied to the plaintiff's negligence and negligent misrepresentation claims).

21

*e.g., Eysoldt v. ProScan Imaging*, 957 N.E.2d 780, 785 (Ohio Ct. App. 2011) (holding that the economic loss rule did not bar the plaintiff's invasion of privacy claim); *Facchina v. Mut. Benefits Corp.*, 735 So.2d 499, 503-04 (Fla. Dist. Ct. App. 1999) (same); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) (finding Nevada's economic loss rule "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff.").

In light of precedent which appears to authorize economic damages in the absence of physical harm for an invasion of privacy claim, the court DENIES Defendants' motion to dismiss Count IV of the Second Amended Complaint on the basis of the economic loss doctrine.

### G. Whether Plaintiff's Negligence and VCPA Claims Must be Dismissed Under the Statute of Limitations.

Defendants request dismissal of Plaintiff's negligence and her VCPA claims, to the extent those claims are based on the allegedly improper origination of the student loans, because they are barred by the applicable statute of limitations.[9] Plaintiff responds that her allegations on their face do not establish that her claims are time-barred, and therefore factual development through discovery is necessary to determine whether the statute of limitations is a viable defense.

A defendant may raise the statute of limitations as an affirmative defense "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar[] . . . as an affirmative

---

[9] Defendants point out that the loan applications clearly confirm that Plaintiff was not a minor when they were submitted, and thus no tolling of the statute of limitations occurred on that basis. This is an apparent reference to this court's previous conclusion that Plaintiff's claim was not patently futile because "the loans at issue here were student loans issued to pay for college" such that the court "must infer Plaintiff was a minor at the time--and may have been a minor for years after--the loans were received." (Doc. 37 at 8.) The court agrees that Defendants have correctly interpreted the loan applications, but they are not before the court.

defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.") (internal quotation marks omitted). "Because a statute of limitations defense can be highly fact dependent, a motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016) (internal quotation marks and alteration omitted). Defendants bear the burden of demonstrating the statute of limitations bars Plaintiff's claims. *See Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("A statute of limitations provides an affirmative defense, and the burden is on the defendant to establish when a . . . claim accrues."); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) ("[T]he statute of limitations is an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence.").

"[U]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010) (internal quotation marks omitted) (citing *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir.2005)); *see also Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (stating that dismissal under Rule 12(b)(6) based "on the running of a statute of limitations" is warranted only when the complaint's allegations "leave no doubt that an asserted claim is time-barred.") (internal quotation marks omitted).

Under Vermont law, Plaintiff's negligence and VCPA claims are subject to the six-year statute of limitations for civil actions. *See* 12 V.S.A. § 511 ("A civil action . . . shall be commenced within six years after the cause of action accrues and not thereafter."); *see also Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605, 607, 987 A.2d 258, 262 ("There is no dispute here that plaintiffs' [VCPA and negligent misrepresentation claims] are subject to the standard six-year statute of limitations applicable to civil actions[]" under 12 V.S.A. § 511); *Lamell Lumber Corp. v. Newstress*

*Int'l, Inc.*, 2007 VT 83, ¶ 15, 182 Vt. 282, 293, 938 A.2d 1215, 1223 (applying a six-year statute of limitations under 12 V.S.A. § 511 to the plaintiff's negligence claim).[10]

"Generally, the statute of limitations begins to run at the point when a plaintiff has a cause of action." *Gettis v. Green Mountain Econ. Dev. Corp.*, 2005 VT 117, ¶ 22, 179 Vt. 117, 125, 892 A.2d 162, 169. The Vermont Supreme Court has explained:

> A cause of action is generally said to accrue upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

*Kaplan*, 2009 VT 78 at ¶ 7, 186 Vt. at 607, 987 A.2d at 262

Plaintiff's negligence claim alleges that Defendants' acceptance of the student loan applications containing Plaintiff's identifying information but submitted by Kathryn Blank in 2005, 2006, 2008, and 2009 gave rise to a claim which she alleges she discovered only after her graduation. Her VCPA claim alleges, in relevant part, that Defendants engaged in unfair, misleading, and deceptive practices by "[f]ailing to appropriately verify the identity of Plaintiff when the[se] loans were made" and by "[f]ailing to appropriately verify that each loan was for the correct amount[.]" (Doc. 38 at 10, ¶ 85(a)-(b).)

While Plaintiff alleges that she became aware of "the *extent* of the Navient loans" after graduating from college, *id.* at 5, ¶ 45, her allegations do not make clear when she first discovered these loans were made in her name. She does not dispute that she benefitted from the disbursement of funds from each of the loans in question. Defendants argue that Plaintiff "clearly knew about her possible . . . claims long before" filing her initial Complaint on December 5, 2016 (Doc. 50 at 3), but this argument relies on copies

---

[10] Defendants assert that Plaintiff's invasion of privacy claim is subject to a three-year statute of limitations, *see* 12 V.S.A. § 512 (providing a three-year statute of limitations for personal harms), but do not argue that the statute of limitations bars this claim.

of the loan applications, which the court cannot consider at the motion to dismiss stage.
The Repayment Form, which was faxed in December 2010, is before the court, however,
it does not clearly bar Plaintiff's claims filed on October 14, 2016. Accordingly,
although Defendants appear to have the better part of the facts, the court cannot
adjudicate their statute of limitations defense based on the record before it. The court
therefore DENIES Defendants' motion to dismiss on this basis.

## H. Whether Plaintiff Plausibly Alleges a Fiduciary Duty or Duty of Care for her Negligence (Count I) and Negligent Misrepresentation Claims (Count III).

In the alternative, Defendants seek dismissal of Plaintiff's negligence and
negligent misrepresentation claims because Plaintiff has not plausibly alleged a fiduciary
relationship or a duty of care between a lender and a borrower as is required under
Vermont law. In response, Plaintiff argues that Defendants inaccurately interpret
Vermont law by asserting that a lender never owes a borrower a duty of care.

Under Vermont law, "[a] borrower-lender relationship is insufficient in itself to
create a fiduciary relationship." *TBF Fin., LLC v. Gregoire*, 2015 VT 36, ¶ 36, 198 Vt.
607, 622, 118 A.3d 511, 522; *see also Capital Impact Corp. v. Munro*, 642 A.2d 1175,
1177 (Vt. 1992) ("Defendants argue that there was a fiduciary relationship between
Tierney and the defendants, but there was no showing on the record of anything but a
debtor-creditor relationship between defendants and Capital."). A lender becomes a
fiduciary when "the relationship . . . ripen[s] into one in which the [borrower] [is]
dependent on, and reposed trust and confidence in, the [lender] in the conduct of its
affairs." *McGee v. Vt. Fed. Bank, FSB*, 726 A.2d 42, 44 (Vt. 1999).

In the absence of a fiduciary relationship, the court must consider whether
Defendants owed Plaintiff a common law duty of care. *See id.* at 44 (distinguishing
between a fiduciary relationship and a "legally cognizable duty which gives rise to a
common law duty of care"). "[W]hether a duty is owed is primarily a legal question in
which the Legislature or courts apply general categorical rules establishing or
withholding liability." *LeClair v. LeClair*, 2017 VT 34, ¶ 10, 169 A.3d 743, 747 (internal

25

quotation marks omitted). Generally, no such duty arises when "a defendant directly provides information to a plaintiff in the course of a transaction between the two parties, which information harms the plaintiff in the transaction with the defendant." *Sturm v. Peoples Tr. & Sav. Bank*, 713 N.W.2d 1, 5 (Iowa 2006) (applying the same Restatement standard adopted in Vermont for negligent misrepresentation claims); *see also Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 608 (S.D.N.Y. 2013) ("Plaintiffs have not offered allegations demonstrating that [the defendant] was more than an arms-length lender; therefore, they have failed to make out a negligent misrepresentation claim."). A standard lender-borrower relationship does not establish a legal duty. *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 217 (2d Cir. 2002) (finding, under New York law, a "lender has no duty of care toward a loan applicant"); *In re Residential Capital, LLC*, 563 B.R. 477, 490 (S.D.N.Y. 2016) (applying Ohio law and concluding that "[a] lender negotiating a loan agreement thus does not owe a borrower a duty of care"); *see also McGee*, 726 A.2d at 44 ("The monthly transactions between the McGees and the Bank were not sufficient to create a duty of care on the part of the Bank[.]").

Although the Vermont Supreme Court has not squarely addressed the issue, in dismissing a fraudulent concealment claim, it has held that a lender generally does not owe a duty to disclose or investigate for the borrower's benefit. *See Fuller v. Banknorth Mortg. Co.*, 788 A.2d 14, 17 (Vt. 2001) (affirming the dismissal of the plaintiff's fraudulent concealment claim because "we have held that a lender does not take on any duty to the borrower when it undertakes an investigation for its own benefit").[11]

In the instant case, Plaintiff alleges that Defendants owed a duty to "verify her identity and other information on Navient's website before" approving each loan, a duty

---

[11] Plaintiff argues that *Fuller v. Banknorth Mortg. Co.*, is inapplicable because *Fuller* involved allegations of fraudulent concealment, not the negligence-based claims asserted in this case. However, *Fuller* is relevant to the extent it held a lender may owe a duty to disclose to the borrower where a lender "gets involved in a capacity beyond that of a mere lending agency so that a duty relationship analogous to that of seller or broker may come into being[.]" *Fuller v. Banknorth Mortg. Co.*, 788 A.2d 14, 17 (2001) (emphasis omitted). *Fuller* also noted when a lender and borrower may establish a fiduciary relationship only in narrow circumstances not applicable here.

26

"to ensure that each of the loans taken out in Plaintiff's name were made to a qualified borrower[,]" and "a duty . . . to maintain a reasonable website to facilitate in the making and servicing of loans including safeguards to verify the identity of the online loan applicant and the applicant's ability to repay the loan." (Doc. 38 at 9, ¶¶ 74-76.) These conclusory allegations, however, are grounded in a customary, arms-length lender-borrower relationship insufficient to establish a fiduciary duty or a duty of care as a matter of law.[12] Because Plaintiff cannot establish that Defendants owed her a legal duty in approving the loan applications, her negligence claim (Count I) is DISMISSED on this basis.

In support of her negligent misrepresentation claim, Plaintiff further alleges that Defendants "owed a duty to provide reliable information concerning loan repayment options[,]" that Defendants misrepresented to her that forbearance was her best repayment option, that this misrepresentation was false and material, and that she justifiably relied on it to her detriment, suffering damages as a result. *Id.* at 11, ¶ 90. These claims are contradicted by the Repayment Form, which Plaintiff signed and averred that if her loans were placed in forbearance, she "underst[ood] that all accrued interest will be capitalized (added to [her] loan principal)[]" and that "[u]npaid interest on private student loans will be capitalized at the end of the forbearance period." (Doc. 44-6 at 2.) As a result, the court "need not accept as true" Plaintiff's allegations. *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, 2017 WL 1190363, at *4 (D. Conn. Mar. 30, 2017); *see also Zevon v. Dep't Stores Nat. Bank*, 2013 WL 3479432, at *4 (S.D.N.Y. July 8, 2013) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."); *IBEW Local 98 Pension Fund v. Cent. Vermont Pub. Serv. Corp.*, 2012 WL 928402, at *8 (D. Vt. Mar. 19, 2012) ("The court's assumption of alleged facts as

---

[12] In granting leave to amend, this court's September 21, 2017 Memorandum and Order reasoned that, under Vermont law, "the existence of duty is primarily a question of fact[,]" citing *Powers v. Office of Child Support*, 795 A.2d 1259, 1265 (Vt. 2002). *Powers*, however, stated that "[t]he existence of a duty is primarily a question of law." *Id.*

true, however, does not extend to factual allegations contradicted by . . . documentary evidence[.]") (internal quotation marks omitted).

Similar to the allegations supporting her negligence claim, the factual basis for Plaintiff's negligent misrepresentation claim arises out of an ordinary arms-length, lender-borrower relationship. She does not plausibly allege that Defendants owed a duty to protect her interests in such circumstances. *See Harte v. Ocwen Fin. Corp.*, 2014 WL 4677120, at \*15 (E.D.N.Y. Sept. 19, 2014) (finding that the plaintiff's allegations that the defendant mortgage servicer "stated that [p]laintiff could be eligible" for certain loan modifications and "requested that [p]laintiff send it various documents . . . do not suggest that [defendant] acted as anything other than as an arms-length loan servicer" and dismissing the plaintiff's negligent misrepresentation claim). The court thus GRANTS Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim (Count III).

## I.     Whether Dismissal is Warranted Because Plaintiff Ratified the Student Loan Agreements.

Assuming *arguendo* that some of the loans originated without Plaintiff's consent, Defendants argue that Plaintiff's subsequent acceptance of the loans' benefits and attempts to repay them ratified the loan agreements and that Plaintiff may not now attack their validity. On this basis, Defendants seek dismissal of Plaintiff's claims relating to the origination of her loans, specifically with regard to her negligence and VCPA claims.

"[Vermont] law is clear that for ratification of an unauthorized act to occur so as to bind the principal, he or she must have actual knowledge of the material facts being adopted at the time affirmance occurs." *Estate of Sawyer by Howard Bank v. Crowell*, 559 A.2d 687, 691 (Vt. 1989) (emphasis omitted) (citing *Page v. Suraci*, 483 A.2d 601, 603 (Vt. 1984)). "Affirmance alone will not necessarily bind a principal who acts upon incomplete or inaccurate information." *Id.* at 691; *see also Brown v. City of S. Burlington, Vt.*, 393 F.3d 337, 343 (2d Cir. 2004) (stating "[i]t is a generally accepted principle that a voidable contract can be cured by ratification through express or implied conduct, but that a person charged with ratification of such a contract must have acted voluntarily and with full knowledge of the facts") (internal quotation marks omitted).

28

Here, it is undisputed that after her graduation, if not before, Plaintiff discovered that student loans had been taken out in her name. She does not affirmatively deny that she received the benefits of those loans, and, indeed, in several instances in her Second Amended Complaint, she identifies herself as "the borrower."[13] She also affirmatively admits that she attempted to repay the loans.

Failure to object within a reasonable time and accepting the benefits of an agreement is evidence of ratification. *See Lakeside Equip. Corp. v. Town of Chester*, 795 A.2d 1174, 1181 (Vt. 2002) (concluding that ratification was not established because the record insufficiently demonstrated that the defendant failed to object to the contract "within a reasonable time after learning what had transpired or by accepting the benefits of the contract"); *see also Boston & M.R.R. v. Howard Hardware Co.*, 186 A.2d 184, 187 (Vt. 1962) (finding "substantial evidence" of ratification when "defendant used the leased premises and took advantage of the facilities for nearly three years[.]"); *Manchester Marble Co. v. Rutland R. Co.*, 136 A. 394 (Vt. 1927) (noting the fact that the plaintiff occupied the premises and paid rent annually under the lease for three years was evidence of ratification).

As an affirmative defense, ratification "may only be raised by a pre-motion answer to dismiss if the defense appears on the face of the complaint." *Riker v. Premier Capital, LLC*, 2016 WL 5334980, at \*8 (S.D.N.Y. Sept. 22, 2016) (internal quotation marks omitted); *see also Staehr*, 547 F.3d at 425 (stating that an affirmative defense can be established "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."). Defendants bear the burden of proof. *See Adams v. Barcomb*, 216 A.2d 648, 650 (Vt. 1966) ("The burden of proof was upon the defendant to prove a subsequent ratification by the plaintiff of the original transaction.").

---

[13] *See* Doc. 38 at 3, ¶ 17 (alleging that Defendant Navient extended "subprime loans without reasonable oversight . . . to underqualified borrowers, *including Plaintiff*.") (emphasis supplied); *id.* at 3, ¶ 18 (asserting that Defendant Navient engages in "the practice of subprime lending" as part of a "business strategy to the detriment of Plaintiff, *who was a subprime borrower*.") (emphasis supplied).

Plaintiff argues that ratification is a question of fact that cannot be resolved at the motion to dismiss stage.[14] The allegations provided on the face of Plaintiff's Second Amended Complaint, however, clearly establish that she accepted the benefits of the student loans and made efforts to repay the loans over the course of several years. This is a hornbook example of ratification. *See Ratification*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining ratification as "[a] person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation or done by a third party having at the time no authority to act as the person's agent"). Any claim to the contrary defies common sense. *See Iqbal*, 556 U.S. at 679 (stating that "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Defendants have therefore met their burden to establish that Plaintiff ratified the student loan agreements. Her claims are therefore DISMISSED insofar as they pertain to the facts and circumstances of the loans' originations.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to strike documents attached to Defendants' motion to dismiss (Doc. 45) and GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss the Second Amended Complaint (Doc. 44). Against Defendant Navient, Plaintiff's negligence claim (Count I) is DISMISSED; her VCPA claim (Count II) is

---

[14] In support of her argument, Plaintiff cites *Adams v. Barcomb*, 216 A.2d 648 (Vt. 1966). In *Adams*, the plaintiff, a minor, purchased an automobile, but became dissatisfied with her purchase approximately two weeks later. When asked to return the money, the defendant seller refused, resulting in the plaintiff filing suit to recover the consideration. While the suit was pending, the plaintiff operated the automobile for approximately two months. The defendant argued that this period of use ratified their contract, but the Vermont Supreme Court disagreed, holding that "temporary use of [an] automobile for about two months, standing alone, in the face of a prior disaffirmance of the contract, and the continuance of [the resulting] litigation to its final conclusion, does not demonstrate an intention on [the plaintiff's] part to ratify the contract[] . . . as a matter of law." *Id.* at 650. In contrast, Plaintiff attempted to repay the student loans over the course of several years during which she did not challenge her status as the borrower or the recipient of the loan proceeds.

DISMISSED IN PART; and her negligent misrepresentation claim (Count III) is
DISMISSED. The court DENIES Defendants' motion to dismiss Plaintiff's invasion of
privacy claim (Count IV). All four Counts against the Loan Trust Defendants are
DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of March, 2018.

Christina Reiss, District Judge
United States District Court